IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MANUEL PEREZ-COLON, | |
| Plaintiff, | |
| v. | CIVIL NO. 02-2413(JAG/BJM) |
| ALEXANDER CAMACHO, et als., | |
| Defendants. | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  Introduction**

Plaintiff Manuel Pérez-Colón has filed this case seeking to recover $3,000.00 taken from him upon his arrest by defendant Alexander Camacho, a Deputy United States Marshal ("DUSM"), and transferred by DUSM Camacho to the Puerto Rico Department of Treasury.  The complaint names as defendants DUSM Camacho, Herman Wirshing (U.S. Marshal for the District of Puerto Rico), and the United States Marshals Service ("USMS").  The case is back before this court upon remand from the First Circuit with instructions to treat the case as an action for return of property filed under Fed. R. Crim. P. 41(g) and to make findings as to the nature of the Commonwealth of Puerto Rico's interest in plaintiff's money and whether the transfer of that money was lawful.  See, Pérez-Colón v. Camacho, 206 Fed. Appx. 1 (1st Cir. 2006).  The matter was referred to me to hold a hearing and to make the required findings. (Docket No. 57, 60); see 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  For the reasons that follow, I find that the defendants have not met their burden of establishing the nature of the Commonwealth's interest in plaintiff's money and that the money was lawfully transferred.  Accordingly, I recommend that plaintiff's motion under Fed. R. Crim. P. 41(g) be granted.

Manuel Pérez-Colón v. Alexander Camacho, et als                                                               Page 2
Civil No. 02-2413 (JAG-BJM)
Report and Recommendation

**II.**      **Factual and Procedural Background**

In 1998, a federal jury convicted plaintiff of various drug offenses and he was sentenced to a term of imprisonment. Because he was also serving a sentence imposed by the courts of the Commonwealth of Puerto Rico, he was confined to a Commonwealth correctional institution. In January 18, 2002, plaintiff escaped from custody. He was arrested on February 6, 2002 by DUSM Camacho and remitted to federal custody. On that date, DUSM Camacho seized certain property in plaintiff's possession, including $3,000 in cash. DUSM Camacho provided plaintiff with a receipt for the money. DUSM Camacho subsequently turned the money over to the Puerto Rico Department of Treasury and received a receipt dated June 18, 2002. (Docket No. 39, Attachment).

On November 21, 2006, the First Circuit handed down an order reversing the district court's dismissal of the plaintiff's complaint seeking return of the money taken from him. The First Circuit instructed this court to treat plaintiff's request for relief as a motion for return of property under Fed. R. Civ. P. 41(g), which provides that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). Moreover, the court noted that "after a defendant has been convicted, the defendant 'is presumed to have a right to [the] return' of any property that has been seized from him or her." Camacho, 206 Fed. Appx. at 2, *quoting*, United States v. Chambers, 192 F.3d 374, 377 (3rd Cir. 1999).

The First Circuit noted that a "Rule 41(g) motion nonetheless may be denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, or the government's need for the property as evidence continues." Id. at 3 (internal

Manuel Pérez-Colón v. Alexander Camacho, et als								Page 3
Civil No. 02-2413 (JAG-BJM)
Report and Recommendation

quotation omitted). Importantly, however, the First Circuit directed that "It is the government's burden, after the termination of criminal proceedings, to demonstrate that return of the property is now warranted, and one way that the government may meet this burden is to show 'a cognizable claim of ownership or right to possession adverse to that of the movant.'" Id., (emphasis in the original), *quoting* Chambers, 192 F.3d at 377.

In light of the instructions on remand, the court entered an order on January 29, 2007, setting an evidentiary hearing and ordering defendants to file by February 8, 2007, a memorandum addressing the nature of the Commonwealth's interest in plaintiff's money, and whether the transfer of the money was lawful. Defendants were further ordered to attach to the motion any supporting documentary evidence. (Docket No. 61). Defendants filed a memorandum on February 8, 2007, arguing that the money was transferred to the Commonwealth pursuant to a "Memorandum of Understanding (MOU) between the USMS and the local law enforcement authorities governing task force operations in the District of Puerto Rico," and that the "Commonwealth's interest is to enforce it's income tax laws." (Docket No. 62, p. 1). However, defendants' motion did not attach a copy of the Memorandum of Understanding or of any other documentation to substantiate defendants' arguments. On March 23, 2007, the court entered an order re-setting the date for the evidentiary hearing and noting defendant's failure to fully comply with its previous order:

> Defendants' motion does not fully comply with the court's order at Docket 61, insofar as it fails to include any documentary evidence supporting defendants' contentions. For instance, the defendants reference a memorandum of understanding and a receipt for funds that were not supplied. Defendants similarly claim that the Commonwealth has an interest in retaining plaintiff's funds to enforce its income tax laws, but fails to provide any supporting documentation such as a tax lien against the plaintiff. Defendants

> shall file by not later than April 2, 2007, certified copies of documents defendants rely on to meet their burden of proving that plaintiff's funds were legally transferred and that the Commonwealth of Puerto Rico had a legal interest. The court will consider such documentation - or the lack of it - in determining defendants' potential liability and the necessity of holding an evidentiary hearing in this matter, which has been re-set for April 30, 2007.

(Docket No. 68). Defendants filed no documentation in response to the order set forth above.

An evidentiary hearing was held on April 30, 2007, during which the court heard arguments from the parties.[1] Neither party submitted any testimony or exhibits. Upon questioning from the court, defendants conceded that the Commonwealth of Puerto Rico had not issued any tax lien or similar order against the plaintiff at the time plaintiff's money was transferred to the Puerto Rico Treasury Department. Defendants nevertheless reasserted their position that the funds were transferred pursuant to a memorandum of understanding but did not offer any memorandum into evidence, nor did defendants produce testimony regarding the memorandum's existence. Defendants alleged that the USMS has not provided a copy of the memorandum and requested the court's assistance in ordering the USMS to produce the memorandum. The court denied this request from the bench, and here confirms its denial, for two reasons.

First, defendants in this case include the USMS itself as well as the U.S. Marshal for Puerto Rico. Hence, to put it plainly, defendants' request for a court order makes no sense, since they are not asking for an order directing a third party to produce a document but rather an order directing themselves to produce it. Clearly, defendants USMS and defendant Wirshing could produce the

---

[1] The hearing was set for 9:00 a.m. but was delayed because counsel for defendants, AUSA Martitza Gonzalez, did not arrive until 9:45 a.m.

memorandum of understanding, to which the USMS allegedly is a party, if they chose to do so. Second, defendants' request for court assistance is untimely. Defendants have been on notice since the First Circuit's Opinion of November 21, 2006 that they have the burden of proving the legitimacy of the transfer, and since this court's January 29, 2007 order that they need to produce any documentation that substantiates their position. Defendants made no request for the court's assistance until the April 30, 2007 evidentiary hearing and until after two different deadlines for them to produce their documentary evidence (February 8 and April 2, 2007) had expired. Defendants have not provided the court with any evidence of their diligence in attempting to secure the memorandum of understanding in the time period between November 21, 2006 and the evidentiary hearing on April 30, 2007. In short, defendants have had ample notice and opportunity to produce all documentary evidence. I therefore conclude that the evidentiary record is closed and that the court must decide the matter before it based on the arguments and information on the record at this time.

### III.  Analysis

Based on the record before the court, and as explained below, I conclude that the defendants have not overcome the presumption that plaintiff is entitled to return of his property and have not met their burden of showing "a cognizable claim of ownership or right to possession adverse to that of the movant." Camacho, supra.

Initially, the parties do not contest certain basic facts, namely that plaintiff's $3,000 was seized by DUSM Camacho upon arresting plaintiff on February 6, 2002 and that DUSM Camacho transferred the money to the Puerto Rico Treasury Department on June 18, 2002. Both incidents are documented by receipts that are part of the record. (Docket No. 39, Attachments). That, however,

is as far as the evidentiary record will take the defendants.

Defendants assert that pursuant to a memorandum of understanding "between the USMS and local law enforcement authorities governing task force operations in the District of Puerto Rico, the money was placed in the custody of the Puerto Rico Treasury Department since this was a joint task force case." (Docket No. 62, p. 1). Defendants, however, have not produced into evidence a copy of the memorandum of understanding despite two court orders to do so and despite the holding of an evidentiary hearing. Defendants also failed to provide at the evidentiary hearing the testimony of any witness to verify under oath the existence of the memorandum of understanding or to explain its scope and terms. In short, despite being offered ample opportunity to present "evidence on any factual issue necessary to decide the [Rule 41(g)] motion", Fed. R. Crim. P. 41(g), the defendants, who carry the burden, have presented none.

Even if the court were to assume the existence of the memorandum of understanding, the court cannot further conclude, without reviewing a copy, that the transfer was conducted under its terms. To put it simply, the court has no way of knowing without reviewing it whether the memorandum called for transfer of the money under the circumstances of this case. For instance, it is unknown whether the memorandum required transfer to the Commonwealth of all money seized from any person arrested during a joint task force operation, or whether a person's money would be transferred only if particularized circumstances - such as the existence of a tax lien or documented tax debt - were found to be present. Since defendants have the burden of proving the legitimacy of the transfer, the failure to offer the memorandum or explanatory testimony into evidence prohibits the court from assuming that the terms of the document mandated transfer under the facts of this case.

Furthermore, although the defendants argue that the Commonwealth's interest in plaintiff's property was to enforce its tax laws, defendants have not produced any evidence that the property in fact was subject to a tax lien or similar order that would establish that the Commonwealth had "a cognizable claim of ownership or right to possession adverse to that of the movant."  In fact, defendants conceded at the evidentiary hearing that no such lien exists.

The lack of a tax lien or similar directive puts this case in stark contrast with the cases, cited with approval by the First Circuit, in which courts denied a motion for return of property under Fed. R. Civ. P. 41(g) upon finding that the transfer of an arrested person's money by federal agents to a State authority was lawful.  For instance, in United States v. Francis, 646 F.2d 251 (6th Cir. 1981), the Sixth Circuit, after rejecting the government's argument that the request to return the property under Rule 41 was moot since the government no longer had the property, found that the federal government was required to comply with a facially valid attachment lien by turning the money over to the state. Id. at 263.   Similarly, the Ninth Circuit affirmed the denial of a Rule 41(g) motion to the extent that the seized property was subject to an Idaho state tax levy or had been forfeited pursuant to Idaho forfeiture law.  United States v. Fitzen, 80 F.3d 387, 388-89 (9th Cir. 1996).  In both those cases, and in contrast to the present case, the federal government established the existence of a state tax lien or the like that constitutes a cognizable interest adverse to the movant's.  Importantly, the court in Fitzen distinguished the facts of that case from those of United States v. Palmer, 565 F.2d 1963 (9th Cir. 1977), where the Ninth Circuit rejected an attempt by the federal government to assert a third party's right to the defendant's property when the third party had "neither asserted a third-party claim of ownership nor pursued such a claim in another forum." Fitzen, 80 F.3d at 389.

In the present case, the defendants have conceded that plaintiff's money was not subject to any similar tax lien, levy or attachment by the Commonwealth; nor have defendants put forth evidence that the Commonwealth has pursued a claim of ownership in another forum. Thus, defendants have wholly failed to establish a cognizable claim of ownership adverse to plaintiff's.

Finally, defendants' memorandum raises arguments that already have been rejected by the First Circuit in this case. For instance, defendants argue that there is no relief under Rule 41 since they turned the property over to the Puerto Rico Department of Treasury. (Docket No. 62, p. 2). The First Circuit, however, implicitly if not explicitly rejected this argument by directing this court on remand to make findings as to the Commonwealth's interest in the money and whether the transfer was lawful. Camacho, 206 Fed. Appx. at 4. Moreover, defendants' suggested argument (Docket No. 62, p. 3) that plaintiff's action does not lie because his arrest, and his property's seizure, were legal was already rejected by the First Circuit. Id., at 3 ("Rule 41(g) applies to legally, as well as illegally, seized property") (emphasis in original).

## IV.     Conclusion

In spite of ample opportunity to do so, defendants have not produced any evidence to sustain their burden on the issues remanded by the First Circuit. Accordingly, I find that the defendant's have failed to establish: 1) that the Commonwealth had a cognizable interest in the funds adverse to the plaintiff's; and 2) that the funds were lawfully transferred. The plaintiff's motion for return of property under Rule 41(g) should therefore be granted.

The parties have ten (10) business days to file any objections to this report and recommendation. See Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file specific and detailed objections same within the specified time waives the right to appeal this order. Henley Drilling Co.

Manuel Pérez-Colón v. Alexander Camacho, et als	Page 9
Civil No. 02-2413 (JAG-BJM)
Report and Recommendation

v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); see also Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate [judges's] role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 30th day of April, 2007.


					S/*Bruce J. McGiverin*
					BRUCE J. McGIVERIN
					United States Magistrate Judge